910 P.2d 657

**In the Matter of the ESTATE OF Dolores E. BARRY, Deceased.**

**BARRY & SEWALL INDUSTRIAL SUP-PLY COMPANY, INC., a Minnesota corporation, Plaintiff–Appellant,**

v.

**ESTATE OF Dolores E. BARRY and Ve-rona N. Blumberg, its Personal Repre-sentative, Defendants–Appellees.**

No. 1 CA–CV 94–0206.

Court of Appeals of Arizona, Division 1, Department E.

Jan. 16, 1996.

Case & Bennett by Stephen S. Case, Scottsdale, for Plaintiff–Appellant.

Hagen, Boyle & Jones, P.C. by Mack T. Jones, Phoenix, for Defendants–Appellees.

## OPINION

WEISBERG, Judge.

■ Verona N. Blumberg, personal representative of the estate of Dolores E. Barry (the "estate"), sought dismissal of a petition for allowance of claim and complaint that had been filed by Barry & Sewall Industrial Supply Company, Inc., (the "corporation") in the consolidated probate proceeding for the estates of Dolores Barry ("Dolores") and her late husband Paul. The trial court treated the motion as one for summary judgment

and granted judgment for the estate.[1] The corporation appeals from that judgment.

### FACTS AND PROCEDURAL HISTORY

Paul died on March 16, 1991. At his death, Paul owned all of the shares of stock in the corporation.

Pursuant to Paul's will, most of his estate passed to Dolores, who was also designated to serve as personal representative. Among the assets that were not passed to Dolores was the corporation's stock. The will provided that the stock be placed into trust with Dolores holding a life estate. At her death, the stock would pass to four long-time employees of the corporation, Steven Olson, Myles Myers, Curtis Speller, and Joseph Jesmer (collectively, "the employee beneficiaries"), provided that they were then still employed by the corporation. The will named Olson and Dolores as co-trustees of the trust.

Dolores was appointed personal representative of Paul's estate on April 2, 1991. On April 9th, 16th and 23rd of 1991, notice to creditors was published.

During Paul's lifetime, he had taken substantial draws from the corporation which were reflected on the company books as "advances to officer" rather than as compensation. Soon after his death, Myers and Olson, both of whom were officers of the corporation, discussed Paul's debt with Dolores. Dolores was shown the books documenting the unpaid advances. According to Myers, Dolores expressed her concern about the debt, and her hope that she would not have to pay it. The corporation made no attempt to collect the debt during Dolores's lifetime.

Within two months of Paul's death, Dolores executed documents establishing herself and the four employee beneficiaries as the five-member board of directors for the corporation. The board then appointed the four employee beneficiaries as the company's officers.

---

1. If matters outside the complaint are presented to and not excluded by the court in considering a motion to dismiss for failure to state a claim, the motion is treated as one for summary judgment, provided all parties are given a reasonable opportunity to present their factual claims to the court. *Parks v. Macro–Dynamics, Inc.,* 121 Ariz. 517, 519–20, 591 P.2d 1005, 1007–08 (App. 1979). In this appeal, no objection has been made to the trial court's treating the motion as one for summary judgment.

During this time, Dolores executed her own will in accordance with the wishes of her late husband, leaving the real property upon which the corporation was situated to the four employee beneficiaries. Dolores left the residue of her estate to two charities, and named Blumberg to be her personal representative.

Dolores died on December 4, 1992. Shortly thereafter, Blumberg was appointed personal representative of Dolores's estate.

Almost immediately after Dolores's death, both Myers and the corporation's attorney had discussions about Paul's debt with Joseph M. Boyle, the attorney for both Dolores's and Paul's estates. The corporation, however, submitted no written claim to either estate until April 2, 1993, when its attorney sent a letter to Boyle requesting payment in the amount of $456,171.94 from Dolores's estate, and attaching supporting documentation. A written notice disallowing the claim was filed and mailed to the corporation and its attorney on May 3, 1993.

On July 6, 1993, the corporation filed a petition for allowance of claim and complaint in both estates and obtained consolidation of its claims. As ultimately amended, the corporation sought to establish the validity of its debt claim against Paul and recover against Dolores's estate, which by then contained most of the decedents' assets. The corporation sought recovery from Dolores's estate under theories of surviving joint tenant liability, contract, and fraudulent conveyance. Additionally, the corporation alleged that Dolores had breached her fiduciary duties to it by causing it to refrain from presenting a claim to Paul's estate while serving as both a director of the corporation and the personal representative of Paul's estate.

After treating Blumberg's motion to dismiss as a motion for summary judgment, the trial court entered judgment for the estate. The trial court found that the corporation had failed to present a timely claim pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") section 14–3803(B), which requires that a claim be presented within two years after the death of the decedent (Paul). The trial court also concluded that the corporation's failure to file a timely claim could not have been caused by

a breach of fiduciary duty by Dolores. The corporation appeals these rulings.

## DISCUSSION

### Standard of Review

In reviewing a grant of summary judgment, we view the facts in the light most favorable to the party against whom summary judgment was granted and draw all reasonable inferences in its favor. *Ness v. Western Sec. Life Ins. Co.*, 174 Ariz. 497, 500, 851 P.2d 122, 125 (App.1992). We review *de novo* the conclusions of law reached by the trial court. *Owens v. City of Phoenix*, 180 Ariz. 402, 405, 884 P.2d 1100, 1103 (App. 1994).

### TIMELINESS OF PRESENTATION OF CLAIM

Except for the alleged breach of fiduciary duty, all the allegations against the estate depend upon a showing that the creditor's claim had been presented in a timely manner. A.R.S. section 14–3803(A) directs that a creditor's claim is barred "unless presented either within four months after the date of the first publication of notice to creditors, or if the creditor is known or reasonably ascertainable to the personal representative, within four months of the notice as prescribed under [A.R.S.] § 14–3801."

The trial court found, and the parties agree, that the A.R.S. section 14–3803(A) four-month period for presenting claims does not apply in this case because the corporation, a known creditor, was not notified that it needed to present its claim within that period. *See* A.R.S. § 14–3803(A). Moreover, due process requires that known creditors be given actual notice of a non-claim statute's time limits when such time limits are not self-executing and involve significant state action, such as the institution of probate proceedings or the appointment of a personal representative. *See Tulsa Professional Collection Servs., Inc. v. Pope*, 485 U.S. 478, 487, 108 S.Ct. 1340, 1345–46, 99 L.Ed.2d 565 (1988); *In re Estate of Kopely*, 159 Ariz. 391, 394, 767 P.2d 1181, 1184 (App.1988).

When actual notice has not been given to a known creditor, A.R.S. section 14–3803(B) requires that, "[n]otwithstanding subsection A of this section, a claim against a decedent's estate arising before the death of the decedent presented more than two years after the decedent's death is barred." A.R.S. section 14–3804 specifies the manner of presenting claims. It directs that a claimant may commence a proceeding against the personal representative in court, A.R.S. § 14–3804(2), or may "deliver or mail to the personal representative a written statement of the claim indicating its basis, the name and address of the claimant and the amount claimed," A.R.S. § 14–3804(1). The statute further provides that "[t]he claim is deemed presented on receipt of the written statement of claim by the personal representative." *Id.*

The trial court found that, since the petition for allowance of claim was filed on July 2, 1993, the claim was barred pursuant to A.R.S. section 14–3803(B) because it had not been presented within two years after the date of Paul's death.

■ The corporation, however, maintains that it twice presented its claim within the two-year period: first, when it orally informed Dolores, personal representative of Paul's estate, about the debt and showed her written records of it, and second, when its attorney discussed the claim by telephone with the estate's attorney. The corporation argues that orally informing either the personal representative or the estate's attorney of a debt is sufficient, especially since the personal representative was also shown written documentation of the debt which she could have copied for her use.[2]

In support of its position, the corporation cites *Lunderville v. Morse*, 112 N.H. 6, 287 A.2d 612 (1972), in which the New Hampshire supreme court held that oral notice of a claim is sufficient. We note, however, that the New Hampshire statute relied upon in *Lunderville* does not require *written* notice of a claim. Thus, it is dissimilar to the Arizona notice statute, as well as to the notice statutes of most other states.

The corporation also cites a number of cases in which courts have held that only substantial compliance with the required manner of presentation is necessary. *E.g., Strong Bros. Enters., Inc. v. Estate of Strong*, 666 P.2d 1109, 1111–12 (Colo.App. 1983); *Peterson v. Marston*, 362 N.W.2d 309, 312–13 (Minn.1985); *Quinn v. Quinn*, 772 P.2d 979, 981 (Utah App.1989). None of these cases, though, has held that mere oral notice constitutes substantial compliance. Our choice, then, is not between strict compliance and substantial compliance, but between written notice and oral notice. To make this choice, we must consider the rationale behind the requirement of written notice.

■ Requiring that a creditor's claim be presented in writing promotes the purpose of the statutory claims procedure by facilitating and expediting the speedy and orderly administration of the estate. *See In re Estate of Levine*, 145 Ariz. 185, 188, 700 P.2d 883, 886 (App.1985). Also, it provides certainty to both the creditor and the personal representative of the estate in at least four ways.

First, a writing creates certainty as to whether a claim has actually been made. It ensures that a definite record of the claim

---

2. On appeal, the corporation also argues that the two-year limitation in section 14–3803(B) does not apply to them because:

   1. principles of statutory construction require that former section 14–3803(A)(2), providing for a three-year limitation period, be applied to the estate of Paul Barry;

   2. the two-year limitation period was equitably tolled; and

   3. due process requires that the three-year limitation apply because the corporation did not receive notice that the limitation period had been changed by the legislature.

Since these arguments were not made to the trial court, we will not consider them on appeal.

*Campbell v. Warren*, 151 Ariz. 207, 208, 726 P.2d 623, 624 (App.1986).

   Notwithstanding, we note that the amendment to former subsection 3803(A)(2) (now codified as subsection (B)), which the corporation characterizes as "state action," does not constitute the type of state conduct required to invoke the protection of due process. Instead, the Supreme Court in *Pope* required "significant" state involvement such as the institution of probate proceedings and the appointment of a personal representative. 485 U.S. at 487, 108 S.Ct. at 1345–46.

can be reviewed by the finder of fact, as opposed to relying upon, as here, the recall of what was once said to a now-deceased personal representative or her attorney.

Second, a written document allows a court to determine if the "claim" was sufficient to fulfill its purpose: giving notice of the debt to the personal representative and showing a plain intention to look to the estate for payment. The notice must "give the representative a reasonable opportunity to examine into, and determine for himself, the justness and the validity of the demand." 34 C.J.S. *Executors and Administrators* § 415 (1942).

Third, a written claim provides certainty as to the terms and status of the debt. Information such as the balance due, the interest rate, and the payment schedule are essential for the personal representative to properly administer the claim. Terms that are clearly set out alleviate the need for a personal representative to guess as to when she must take action on the debts of the deceased. *Nathanson v. Superior Court*, 12 Cal.3d 355, 115 Cal.Rptr. 783, 791, 525 P.2d 687, 695 (1974).

Finally, a writing provides certainty as to the date a claim was presented. This is necessary to establish both a precise denial date, if that be the case, or the date from which any statutory interest will begin to accrue.

The corporation has not cited any case supporting its novel argument that showing the personal representative written documentation of a debt satisfies the requirement of delivering or mailing her a written statement of its claim. In any event, we reject this contention. A claimant must provide the personal representative with a copy of the claim for her to keep so that she and any other interested parties will not have to guess as to whether action is required to be taken with respect to that debt.

■ Moreover, were we to hold that a written claim is not required, we would be ignoring the plain and unambiguous language of A.R.S. section 14–3804(1): "[t]he claimant may deliver ... a *written* statement of the claim" and "[t]he claim is deemed presented on receipt of the *written* statement." (Em-

phasis added.) The first principle of statutory construction is that we must follow the plain and ordinary meaning of words and phrases unless some other meaning is apparent from the context. *Ring v. Taylor*, 141 Ariz. 56, 70, 685 P.2d 121, 135 (App.1984). Accordingly, since no other meaning is apparent from the context, we will not deviate from the language of the statute.

As the Maryland Court of Special Appeals reasoned in *Lampton v. LaHood*, 94 Md.App. 461, 617 A.2d 1142, 1146 (1993):

> To permit substantial compliance with these kinds of statutory requirements, does not, however, sanction the elimination of such requirements altogether. There must still be compliance with the statute, indeed there must be "substantial compliance" with it. Lampton does not cite any case, from any jurisdiction, in which a court has held that in the absence of some writing—whether it be a formal claim, or a letter, or a memorandum, or a lawsuit—a claimant has been held to have substantially complied with a claims notice statute like § 8–104. In [*Lowery v.*] *Hairston*, 73 Md.App. 189, 533 A.2d 922 (1987)] and all of the out-of-state cases cited above, the claimant timely notified the personal representative of the claim by a *writing* of some kind.

Rejecting the notion that "actual knowledge" of a claim should be sufficient, the Maryland court also stated:

> Those jurisdictions that have considered the question have, for the most part, similarly rejected the view that actual knowledge of a claim by the personal representative eliminates a creditor's statutory obligation to file a timely written claim.

617 A.2d at 1147. The court then concluded that only New Hampshire, based on the wording of its peculiar statute, has held that oral notice eliminates the need to file a timely written claim. *Id.*

A.R.S. section 14–3804, though, follows the pattern of almost every other state by expressly requiring that written notice of a claim be given to the personal representative. We agree with the California Supreme Court's rationale for this requirement:

We are satisfied that mere notice to the estate is not enough. It is too late in the day to equate mere notice and compliance with statutory filing requirements thereby imposing on representatives of estates the responsibility of guessing when they must take action in respect to the debts of decedents.

*Nathanson,* 525 P.2d at 695.

Accordingly, we find that the notice provided by the corporation to Dolores Barry and to counsel for Paul Barry's estate was insufficient because it did not satisfy the requirement of A.R.S. section 14–3804 that the notice be in writing.[3]

### CLAIM FOR BREACH OF FIDUCIARY DUTY

■ Finally, the corporation argues that the trial court erred in dismissing its claim against Dolores for breach of fiduciary duty. We disagree.

According to the affidavits filed by the corporation, all Dolores did was express her hope that she would not have to pay the "advances to officer" debt. Even if her statement could be construed as a request that the corporation not file a claim in Paul's estate, a "request" was all that it was. Dolores took no action preventing any of the four employee beneficiary officers, or the board of directors, from filing such a claim. While the employee beneficiaries may have felt it was to their advantage to abide by her wishes, it was their decision to make. The corporation has failed to cite any authority holding that this type of situation could be characterized as a breach of fiduciary duty.

Moreover, even if the foregoing could be perceived as a breach of fiduciary duty, Dolores's death gave the corporation more than three months to file a written claim without any fear of reprisal from her. Even if the lack of a personal representative proved to be a problem to the filing of the claim, the corporation could have petitioned for the appointment of successor personal representative, but it did not. In fact, under A.R.S. section 14–3203(A)(7), the corporation, as a creditor, was itself eligible to serve as personal representative if no one with higher priority were available. We, therefore, agree with the trial court's determination that the cause of the corporation's claim being time-barred was its own failure to present it rather than a breach of fiduciary duty by Dolores.

### ATTORNEYS' FEES ON APPEAL

■ The estate requests attorneys' fees on appeal as the successful party in a matter arising out of contract pursuant to A.R.S. section 12–341.01. In the exercise of our discretion, we award attorneys' fees on appeal in an amount to be determined upon the estate's compliance with the requirements of Rule 21(c) of the Arizona Rules of Civil Appellate Procedure.

### CONCLUSION

For the reasons explained in this opinion, we affirm the trial court's entry of summary judgment in favor of the estate.

GRANT, P.J., and PATTERSON, J., concur.

---

**3.** We do not find that the notice to the estate's attorney was insufficient because it was made to the *attorney* and not the personal representative. See *Strong Bros.,* 666 P.2d at 1112 (finding such notice sufficient). Instead, we find it insufficient because it was not made in *writing.*